UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAYMUNDA ZUNIGA, ) | |
| ) | No. 11 CV 939 |
| Plaintiff, ) | |
| ) | |
| v. ) | Magistrate Judge Young B. Kim |
| ) | |
| SOUTHWEST AIRLINES, a foreign ) | |
| corporation, ) | |
| Defendant. ) | |
| _____) | |
| ) | |
| SOUTHWEST AIRLINES, a foreign ) | |
| corporation, ) | |
| ) | |
| Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| HOUSE OF DOORS, INC., an Illinois ) | |
| corporation, HELSON'S GARAGE ) | |
| DOOR STORE, LTD., an Illinois ) | |
| corporation, and ) | |
| R.A.S. SERVICES, INC., an Illinois ) | |
| corporation, ) | |
| ) | January 22, 2013 |
| Third-Party Defendants. ) | |

**MEMORANDUM OPINION and ORDER**

Before the court is third-party defendant House of Doors, Inc.'s Motion to Compel Defendant Southwest Airlines to Fully Answer Written Discovery. For the following reasons, the motion is granted:

**Background and Facts**

Plaintiff Raymunda Zuniga brought a negligence lawsuit against defendant Southwest Airlines Co. ("Southwest"). Southwest then filed a third-party complaint against defendants House of Doors, Inc. ("HOD"), Helson's Garage Door Store, Ltd. ("Helson's"), and R.A.S. Services, Inc. ("RAS"). Zuniga alleges that she sustained injuries in January 2009 when she was struck by a garage door while working at Chicago-Midway International Airport. The parties have engaged in written discovery and now dispute whether Southwest may withhold from HOD certain documents based on the attorney-client privilege and work-product doctrine, among other objections. Specifically at issue are HOD's Interrogatory 6 and Requests to Produce 1, 2, 23, and 24.

Interrogatory No. 6 asks the following: "[s]tate whether you or any employee of [Southwest] have had any conversations or communications with anyone regarding the cause(s) of the occurrence and/or the subject garage door." (R. 65-1 at 8.) Southwest objected, claiming that any such statements were "privileged and confidential communication[s] between attorney and client." (Id. at 8-9.) Subject to this objection, Southwest provided that Ray Huskey (a Southwest employee) called Helson's after Zuniga's accident to request an evaluation of the garage door at issue. Southwest further provided that Sandra Moore (a Southwest Customer Claims Administrator) had been in contact with Alberto Alanis of RAS regarding the accident. Southwest then referred HOD to emails previously produced "from Moore to Alanis." (Id.)

On May 3, 2012, HOD asked Southwest to supplement its answers to discovery with information supporting its claims of attorney-client privilege. (R. 65 at 4.) In its Supplemental Answers to Interrogatory 6, Southwest repeated its initial objections and then acknowledged the existence of the following exchanges: (1) Zuniga's and/or her supervisor's report of the accident to Huskey; (2) Huskey's call to Helson's to request the garage door evaluation; (3) Moore's emails to Alanis (previously produced by Moore to Alanis); (4) email exchanges among Moore, Huskey and Janet Czajkowski (Southwest's Senior Administrative Supervisor) regarding the accident (withheld on the basis of attorney-client privilege); and (5) email exchanges between Moore and Bill Merda (Southwest's Cargo Customer Service Manager) regarding the accident (withheld on the basis of attorney-client privilege). (R. 65-2 at 5-6.)

Turning to the requests for production of documents, Request 1 asks Southwest to produce "[s]tatements, memoranda of interview, or other documents relating to the occurrence, by any party which are in the possession and control of some person or entity other than the party or his/her attorney or insurers." (R. 65-1 at 4.) Southwest objected to producing communications between its employees and its counsel, or among its employees, on grounds they may be construed as statements and thus protected by the attorney-client privilege. (Id.) Subject to these objections, Southwest produced an RAS Accident Investigation Report created by Alanis. (Id. at 4-5.) In its supplemental response to Request 1, Southwest repeated its initial objections and then further objected to the verbiage "other

documents relating to the occurrence" as "not defined and thus overly broad and unduly burdensome." (R.65-2 at 4.) Subject to these objections, Southwest again directed HOD to the January 12, 2009 Accident Report. Other than this document, Southwest claimed to have no other responsive documents. (Id. at 5.)

Request 2 asks Southwest to produce "[s]tatements, memoranda of interview, or other documents, by any other persons or witnesses who have knowledge of the facts [] alleged in the complaint or opinions related to the occurrence or events alleged in the Complaint." (R. 65-1 at 5.) Southwest objected to the request on the same bases as Request 1. In its supplemental response, Southwest continued to object to the request as inadequately defined, overly broad and unduly burdensome. (Id.) Subject to these objections, Southwest referred to four email exchanges: (1) emails exchanged between Moore and Alanis; (2) emails exchanged between Moore, Huskey, and Czajkowski on February 11, 2009 (withheld under the attorney-client privilege); (3) emails exchanged between Mary Mortenson (a Southwest claims department employee) and Czajkowski on March 24, 2009, and April 8, 2009 (withheld as privileged); and (4) emails exchanged between Moore and Merda on May 13, 2009 (withheld as privileged). (R. 65-2 at 5-6.)

Request 23 asks Southwest to produce "documents regarding any investigation into the occurrence and/or any examination, observation, and/or testing of the subject garage door." (R. 65-1 at 9.) Southwest objected to producing employee notes, arguing that they were created in anticipation of litigation. (Id.) Subject to these objections, it then produced

4

correspondence dated February 11, 2009, between Moore and Alanis. (Id.) In its supplemental response, Southwest repeated its initial objections and further added that the terms "examination" and "observation" are not adequately defined, not limited in time or scope, overly broad, and unduly burdensome. (R. 65-2 at 6.) Southwest also maintains that it has not conducted any testing of the garage door. (Id.)

Request 24 seeks "any documents in your possession that you believe support your allegations being made in the Third Party Complaint." (R. 65-1 at 9.) Southwest objected that this request seeks information "subject to legal interpretation and conclusion . . . [and] may be protected by attorney work-product and/or attorney-client confidentiality." (Id.) In its supplemental response, Southwest reiterated its initial objections. (R. 65-2 at 6.)

HOD maintains that Southwest has failed to produce any evidence supporting any of its claims of privilege or that any of the communications at issue were made to an attorney acting in his legal capacity for purposes of securing legal advice or services. (R. 65 at 6-7.) HOD also takes issue with Southwest's various other objections, including that the requests are overly broad, unduly burdensome, or seek a legal conclusion. (Id. at 6-9.) In response, Southwest defends its invocation of privilege, stating that: (1) it is insured by United States Aviation Underwriters, Inc. ("USAU"); (2) Moore and Mortensen (both of whom work in Southwest's claim department) regularly communicate with USAU and USAU's retained counsel regarding pending claims; and (3) USAU is defending Southwest in the present case. (R. 69 at 1-2.) Southwest further contends that the disputed "post-accident emails" between

5

Moore, Mortensen, and "other Southwest employees" were generated for purposes of investigating Plaintiff's claim and "to provide claim information to USAU and to its anticipated defense attorneys." (Id. at 2-3.) As such, Southwest contends that these documents are protected by the attorney-client and work-product privileges. (Id.) In reply, HOD argues that Southwest has failed to identify communications between an "insurer and insured," the existence of any corporate "control group," or the applicability of the work-product doctrine. (Id. at 1-3.)

**Analysis**

Federal Rule of Civil Procedure 26(b)(1) provides that a party "may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents, or other tangible things and the identity and location of persons who know of any discoverable matter." Pursuant to Rule 26(b)(5)(A), "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged," the party must make a claim of privilege and then "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." In other words, the explanation must be sufficiently specific to allow the court to determine whether the claimed privilege or immunity is applicable.

The attorney-client privilege protects verbal and written communications exchanged in confidence between a client and attorney for the purpose of obtaining legal advice. *See Upjohn Co. v. United States*, 449 U.S. 383, 394-99 (1981). Because this lawsuit is a diversity action, the applicability and scope of the attorney-client privilege is governed by Illinois law. *See Wielgus v. Ryobi Techs., Inc.*, No. 08 CV 1597, 2010 WL 3075666, at *3 (N.D. Ill. Aug. 4, 2010); *see also* Fed. R. Evid. 501. Illinois law, like federal law, requires the court to determine whether the contested communication "originated in confidence that it would not be disclosed, was made to an attorney acting in his legal capacity for the purpose of securing legal advice or services, and remained confidential." *Rounds v. Jackson Park Hosp. & Med. Ctr.*, 319 Ill.App.3d 280, 285-86 (1st Dist. 2001); *see also Sandra T.E. v. South Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010).

Within the corporate context, Illinois requires corporations asserting the attorney-client privilege to show that the contested communication was made by someone within the "corporate 'control group.'" *Hyams v. Evanston Hosp.*, 225 Ill.App.3d 253, 257-58 (1st Dist. 1992). An employee falls within the "control group" when that person's "advisory role to top management in a particular area is such that a decision would not normally be made without his advice or opinion, and whose opinion in fact forms the basis of any final decision by those with actual authority." *Favala v. Cumberland Eng'g Co.*, 17 F.3d 987, 989-90 (7th Cir. 1994) (quoting *Consol. Coal Co. v. Bucyrus-Erie Co.*, 89 Ill.2d 103, 120 (1982)). Critically, however, "the individuals upon whom [the employee] may rely for supplying

7

information are not members of the control group." *Id.* at 990 (internal quotation marks omitted). Further, an individual is not within the control group if his or her "role was one of supplying the factual bases upon which were predicated the opinions and recommendations of those who advised the decision-makers." *Id.* (internal quotation marks omitted). If an employee does fall within the control group, the court next determines whether "the communication originated in a confidence that it would not be disclosed, was made to an attorney acting in his legal capacity for the purpose of securing legal advice or services, and remained confidential." *Id.* (internal quotation marks omitted).

Illinois also extends the attorney-client privilege to communications between an insured and insurer where the insurer owes an obligation to defend the insured. *See Pietro v. Marriot Senior Living Servs. Inc.*, 348 Ill.App.3d 541, 551 (1st Dist. 2004). The reasoning behind the extension of the attorney-client privilege to this setting is that an insurer often chooses the attorney under a common liability contract. Thus, "the insured may properly assume that the communication is made to the insurer as an agent for the dominant purpose of transmitting it to an attorney for the protection of the interests of the insured." *Id*. A party asserting this privilege must show: "(1) the identity of the insured; (2) the identity of the insurance carrier; (3) the duty to defend a lawsuit; and (4) that a communication was made between the insured and an agent of the insurer." *Id.* at 552. Further, for the privilege to attach, the communication must have remained confidential. *Id.* at 574.

Of final relevance here is the work-product doctrine, which, unlike the attorney-client privilege, is a doctrine governed by federal law. *See* Fed. R. Civ. P. 26(b)(3). The doctrine protects documents prepared by an attorney or the attorney's agent in anticipation of litigation for purposes of analyzing, evaluating, and preparing a client's case. *See United States v. Smith*, 502 F.3d 680, 689 (7th Cir. 2007). In determining whether documents are protected as work product, the court must examine whether the sought-after documents convey an attorney's thought processes and mental impressions. *Sandra T.E.*, 600 F.3d at 621-22. Courts in this district have limited this protection to a party (or a party's representative) to the litigation. *See Cook v. City of Chicago*, No. 06 CV 5930, 2010 WL 331737, at *1 (N.D. Ill. Jan. 26, 2010).

Here, Southwest bears the burden of adequately describing the nature of the withheld documents and communications to permit the court to make a reasonable assessment of the privileges' applicability. *See Wielgus v. Ryobi Techs., Inc.*, No. 08 C 1597, 2010 WL 3075666, at *6 (N.D. Ill. Aug. 4, 2010); *see also Cox v. Yellow Cab Co.*, 61 Ill.2d 416, 419-20 (1975) (party claiming privilege "has the burden of showing the facts which give rise to the privilege"). Southwest has provided scant, if any, information supporting its claim that any privilege attaches to the emails and communications it is withholding. First, the work-product doctrine only applies to documents prepared by attorneys in anticipation of litigation. There is nothing to suggest, nor does Southwest argue, that an attorney's thought processes or mental impressions pertaining to the litigation are conveyed in the contested emails. The

9

fact that Moore and Mortenson, for instance, are Southwest employees working within the claims department, and that they (and other Southwest employees) regularly communicate with USAU regarding "potential claims against Southwest," fails to show that any of the contested communications include an attorney's protected thoughts or impressions. Southwest seems to assert that the work-product doctrine applies simply because emails by and among various Southwest employees in the first few months after Plaintiff's injury may, in time, find their way to attorneys working on this case. The work-product doctrine is not implicated in such a situation.

Further, Southwest has provided insufficient information to support the applicability of the attorney-client privilege on any grounds. Southwest focuses its attention on the applicability of the insurer-insured privilege. At the motion hearing held on November 26, 2012, Southwest represented that the emails generated by the claims administration individuals were privileged because they were communicated to Southwest's counsel. Southwest further argued that the claims administrators, while not attorneys, serve as agents of Southwest to gather information in anticipation of litigation to give to the insurer, who in turn retains Southwest's counsel. However, in its response to HOD's motion to compel, Southwest softens these assertions and argues only that the emails were generated "for the purposes of investigating Zuniga's claim and to provide that claim information to USAU and to its anticipated defense attorneys." (R. 69 at 3.)

Aside from setting forth a few cases, Southwest does not explain how the insured-insurer rule applies to the discovery material at issue. As set forth above, a party asserting the insurer-insured privilege must show: "(1) the identity of the insured; (2) the identity of the insurance carrier; (3) the duty to defend a lawsuit; and (4) that a communication was made between the insured and an agent of the insurer." *Pietro*, 348 Ill.App.3d at 552. Further, the party must show that the communication remained confidential. *Id*. at 574. Southwest does not meet the threshold burden of establishing these four requirements, much less allege that the communications at issue remained confidential. As such, this court concludes that it need not address whether the insurer-insured variation of the attorney-client privilege applies in this case.

In the absence of the insurer-insured privilege, Southwest must then demonstrate that the attorney-client privilege attaches to the contested communications. Southwest, as a corporate claimant, must show that the communications were made by an individual in Southwest's corporate control group. *See Hyams*, 225 Ill.App.3d at 257-58. Southwest does not argue that Moore, Mortensen, Huskey, Czajkowski, and Merda (senders and receivers of the contested communications) are members of Southwest's control group. Nor has Southwest explained how these employees are individuals with decision-making authority regarding this lawsuit, or whether the opinions of these individuals formed the basis of final decisions by those with actual authority. *Id.* at 258; *see also Round*, 319 Ill.App.3d at 288 ("The test focuses on the status of the employee within the hierarchy of the corporation.").

Accordingly, the information Southwest has provided, without more, is insufficient for the corporate attorney-client privilege to attach to the communications identified.

Finally, Southwest raised objections in its answer to the discovery requests that certain requests are over-broad, inadequately defined, not limited in time or scope, unduly burdensome, or call for a legal conclusion. But because Southwest failed to argue these general objections and provide any specifics in support of these objections in its response to HOD's motion to compel, the court finds that Southwest has abandoned them. *See Mitsui Sumitomo Inc. Co., Ltd. v. Moore Transp., Inc.*, 500 F.Supp.2d 942, 951 (N.D. Ill. 2007)(nothing that insufficiently developed arguments are waived).

## Conclusion

For the foregoing reasons, HOD's motion to compel is granted.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**